UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

MARK G. MACEK,                          )
                                        )
              Plaintiff,                )
                                        )
       v.                               )        Case No. 2:16-cv-208
                                        )
NANCY A. BERRYHILL,                     )
Acting Commissioner of Social Security,[1] )
                                        )
              Defendant.                )

**OPINION AND ORDER**

This matter is before the court on petition for judicial review of the decision of the

Commissioner filed by the plaintiff, Mark Macek, on June 7, 2016.  For the following reasons,

the decision of the Commissioner is **REMANDED.**

*Background*

The plaintiff, Mark G. Macek, filed an application for Disability Insurance Benefits on

June 23, 2009, alleging a disability onset date of November 3, 2008.  (Tr. 11).  The Disability

Determination Bureau denied Macek's application on December 4, 2009, and again upon

reconsideration on March 26, 2010.  (Tr. 11).  Macek subsequently filed a timely request for a

hearing on May 6, 2010.  (Tr. 11).  A video hearing was held on December 20, 2010, before

Administrative Law Judge (ALJ) Kathleen Mucerino, and the ALJ issued an unfavorable

decision on February 1, 2011.  (Tr. 11-24).  Macek appealed the ALJ's decision to the Appeals

Council, and this court remanded this matter to the Agency on September 27, 2013.  (Tr. 576).

---

[1]      Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the
Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W.
Colvin as the defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last
sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

On September 25, 2014 and May 22, 2015, hearings were held before Administrative Law Judge (ALJ) Dennis Kramer, and the ALJ issued an unfavorable decision on July 17, 2015. (Tr. 576-594). Medical Experts (ME) Gilberto Munoz and Jeffery Andert appeared and provided telephonic testimony, and Vocational Expert (VE) Thomas Grzesik testified at the hearing on September 25, 2014. At the subsequent hearing on May 22, 2015, Medical Expert (ME) Dr. Lee A. Fischer and Vocational Expert (VE) Richard Riedl testified. The Appeals Council denied Macek's exceptions, making the ALJ's decision the final decision of the Commissioner. (Tr. 567-72).

The ALJ found that Macek last met the insured status requirements of the Social Security Act on December 31, 2014. (Tr. 579). At step one of the five step sequential analysis for determining whether an individual is disabled, the ALJ found that Macek had not engaged in substantial gainful activity during the period from his alleged onset date of November 3, 2008, through his date last insured on December 31, 2014. (Tr. 579). At step two, the ALJ determined that Macek had the following severe impairments: an obese body habitus, type II diabetes mellitus, degenerative disc disease of the lumbar spine, history of obstructive sleep apnea (OSA), tendinitis, a major depressive/affective disorder, and history of a polysubstance use disorder. (Tr. 579). The ALJ indicated that he considered Macek's non-severe impairments, including acute gout, hypertension (HTN), and pes planus. (Tr. 579). Also, the ALJ found that Macek's alleged anxiety disorder and psychosis condition (auditory hallucinations) were not medically determinable. (Tr. 580).

At step three, the ALJ concluded that through the date last insured Macek did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Tr. 580). The ALJ assigned great weight to the medical experts'

opinions that Macek did not meet one of the listed impairments. (Tr. 580). The ALJ concluded that the medical experts had detailed knowledge of the facts as well as the standards set forth in the disability law and Regulations. (Tr. 580). Further, the ALJ determined that the medical experts' opinions remained appropriate since there had been no new and material evidence. (Tr. 580). The ALJ also considered the exacerbatory impact of Macek's obesity in determining whether his impairments met or medically equaled the relevant listings, prior to the date last insured. (580-81).

The ALJ found that Macek's mental impairments did not meet or medically equal listings 12.04 and 12.09. (Tr. 581). In finding that Macek did not meet the above listings, the ALJ considered the paragraph B criteria for mental impairments, which required at least two of the following:

> marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.

(Tr. 581). The ALJ defined a marked limitation as more than moderate but less than extreme and repeated episodes of decompensation, each of extended duration, as three episodes within one year or once every four months with each episode lasting at least two weeks. (Tr. 581).

The ALJ determined that Macek had moderate restrictions in daily living activities. (Tr. 581). The Function Report indicated that Macek's depression limited his motivation to engage in normal activities of daily living. (Tr. 581). The psychological records noted that at times Macek appeared disheveled and unshaven, but usually he appeared appropriately dressed and hygienically within functional limits. (Tr. 581). The ALJ indicated that Macek remained capable of living independently. (Tr. 581). The State agency psychological consultants found that Macek had mild limitations in daily living activities, while the medical expert opined that he

had moderate limitations. (Tr. 581). The ALJ afforded significant weight to the medical expert, and therefore adopted moderate limitations in daily living activities. (Tr. 581).

The ALJ found that Macek had moderate difficulties in social functioning. (Tr. 581). The Function Report indicated that Macek hated people in general, yet the record stated that he behaved appropriately with his clinicians and their staff. (Tr. 581). Also, the ALJ noted that Macek drove and interacted with friends in a fantasy sports league. (Tr. 581). Again, the ALJ adopted the finding of the medical expert. (Tr. 582).

The ALJ concluded that Macek had moderate difficulties in concentration, persistence, or pace. (Tr. 582). Macek had alleged memory loss, poor focus, and cognitive limitations. (Tr. 582). However, the ALJ indicated that the record failed to reflect greater limitations than simple, routine, and repetitive tasks in a non-production type environment. (Tr. 582). The ALJ indicated that all of Macek's GAF scores, ranging from 30 to 70, were considered when assessing his RFC. (Tr. 582). The Function Reports represented that Macek read history books, played video games, and watched an extensive amount of television. (Tr. 582). Further, the ALJ gave the finding that Macek had the psychological and cognitive ability to manage his own funds great weight. (Tr. 583). The ALJ noted that at all times Macek was found alert and oriented to persons, places, and time. (Tr. 583). However, despite having some short-term memory issues, he was a historian and his judgment, insight, and abstract thought processes were intact. (Tr. 583). The ALJ indicated that when he assessed the severity of Macek's allegations regarding his mental disorder he considered Macek's cognitive ability to engage in such complex tasks like driving a motor vehicle. (Tr. 583).

The ALJ found that Macek had not experienced any episodes of decompensation which were of extended duration. (Tr. 583). Because Macek did not have two marked limitations or

one marked limitation and repeated episodes of decompensation, the ALJ determined that he did not satisfy the paragraph B criteria. (Tr. 584). Additionally, the ALJ found that Macek did not satisfy the paragraph C criteria. (Tr. 584).

The ALJ then assessed Macek's residual functional capacity (RFC) as follows:

> through the date last insured, claimant had the residual functional capacity to lift and carry up to 10 pounds; at one time, the claimant could have sat for 2 hours, and stood and or/walked for 30 minutes; in an 8-hour workday, the claimant could have sat for 6 hours, and for the remaining 2 hours, the claimant could have stood and/or walked; the claimant could have never climbed ladders, ropes, or scaffolds, kneel, crouch, or crawled; the claimant could have occasionally climbed ramps and stairs, balance and or stooped; the claimant would have had to avoid all exposure to work at unprotected heights and around dangerous moving machinery; the claimant could not operate a commercial motor vehicle; the claimant could have tolerated occasional exposure to humidity and wetness, and pulmonary irritants such as fumes, odors, dusts, gases, and area of poor ventilation, as well as extreme temperatures, and vibrations; the claimant was limited to simple, routine and repetitive tasks with no fast-paced production quotas; the claimant was further limited to occasional interaction with co-workers, supervisors, and the general public; lastly, the claimant would have been able to understand, remember, and carry out simple instructions, make judgments on simple work related decisions, and respond to usual work situations and changes in a routine work setting.

(Tr. 584). The ALJ explained that in considering Macek's symptoms he followed a two-step process. (Tr. 585). First, he determined whether there was an underlying medically determinable physical or mental impairment that was shown by a medically acceptable clinical or laboratory diagnostic technique that reasonably could be expected to produce Macek's pain or other symptoms. (Tr. 585). Then, he evaluated the intensity, persistence, and limiting effects of the symptoms to determine the extent to which they limited Macek's functioning. (Tr. 585). The ALJ found that Macek's statements concerning the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (Tr. 585).

First, regarding Macek's diabetes mellitus/obesity the ALJ found that the record was clear that Macek had elevated blood sugar levels. (Tr. 585). Macek had sought follow-up care from Dr. Jones. (Tr. 585). However, the ALJ noted that when Macek controlled his dietary intake and complied with his insulin regimen no diabetic complications were objectively documented. (Tr. 585). Therefore, the ALJ concluded that Macek's failure to follow his prescribed regimen detracted from the alleged severity and limiting nature of his diabetic impairment. (Tr. 586).

Next, the ALJ addressed Macek's history of an obstructive sleep apnea (OSA) disorder that was confirmed following a sleep study in April of 2009. (Tr. 586). The ALJ indicated that Macek's condition could be controlled with the proper equipment. (Tr. 586). At the September 2014 hearing, Macek had been noncompliant due to an equipment failure. (Tr. 586). Therefore, the ALJ found that Macek's noncompliance, the lack of objectively noted allegations of daytime sleepiness in the record, and the failure to follow up on a request for a new sleep study discredited the persuasiveness of his allegations. (Tr. 586).

Regarding Macek's depressive/affective disorder and history of polysubstance use, the earliest reference to formal psychological care was in November 2009. (Tr. 587). Dr. Gandhi, who represented that he had treated Macek since early 2002, failed to supply records in support of his opinion. (Tr. 587). Therefore, the ALJ indicated that he was unable to determine how consistent Dr. Gandhi's opinion was with his clinical impressions. (Tr. 587). Dr. Gandhi reported that Macek suffered from vegetative depression, fatigue, depressive feelings, with a tendency to self-mediate with ethanol. (Tr. 587). He found that Macek was paralyzed emotionally and incapable of working. (Tr. 587). The ALJ assigned little weight to his opinion

because the examination impressions accompanying the records failed to support his opinion that Macek was disabled, an issue reserved for the Commissioner. (Tr. 587).

During the examination, Dr. Gandhi found Macek to be pleasant and friendly, which the ALJ indicated undermined Macek's alleged social limitations. (Tr. 587). Macek had some concentration, persistence, or pace limitations with short-term memory deficits, but his long-term memory was preserved. (Tr. 587). Dr. Gandhi assessed Macek with a GAF score of 35, however, the ALJ found that the score was not reconcilable with the higher GAF score from the hospitalization records or Dr. Gandhi's assessment that Macek was able to manage his own finances. (Tr. 587).

Dr. Gandhi submitted a medical source statement in February 2010 that opined that Macek was disabled. (Tr. 587). The examination notes found that Macek remained alert and oriented to persons, places, and time, and while depressed with passive suicidal/homicidal ideations, his speech was normal, his judgment and insight were intact, and he denied hallucinations. (Tr. 587). The ALJ concluded that this finding was consistent with the record, and that no other clinician noted significant cognitive deficits. (Tr. 587).

The ALJ indicated that Mathew Molenaar, a licensed clinical social worker, was not considered an acceptable source. (Tr. 587). The ALJ took issue with Molenaar's opinions because no formal diagnoses were reported and his assessment of Macek's work functionality included items that he did not examine Macek for, like his financial status and physical factors. (Tr. 587). Also, he accepted Macek's subjective complaints regarding his alleged limitations. (Tr. 587-88).

The clinical notes from the State agency psychological examination reported that Macek had daily hallucinations. (Tr. 588). The ALJ gave little deference to those claims because the

record indicated that Macek had denied hallucinations. (Tr. 588). Further, the ALJ noted that despite Macek's alleged mental disability he could cook simple meals, order fast food, shop, and take on limited chores. (Tr. 588). Also, the ALJ indicated that Macek was able to maintain a cleaning lady and greet his neighbors, despite reporting that he hated everyone. (Tr. 588).

Regarding Macek's cognitive ability, he reported that he read, watched television, and played video games. (Tr. 588). Also, Macek had a license, arrived alone to the exam, and had no limitations on money management. (Tr. 588). At the exam, Macek's hygiene was intact, and he remained alert and oriented to persons, places, and time. (Tr. 588). He was anxious, but the examiners found his affect was appropriate and his fund of information intact with preserved judgment and insight. (Tr. 588). The examiner found Macek to be depressed and assessed him with a GAF score between 60 and 65. (Tr. 588).

Macek was seen two additional times in early 2014 and late 2014 for psychological care. (Tr. 588). At the March 2014 psychological evaluation, Macek alleged severe pain as a major factor in his depression. (Tr. 588). Dr. Beck noted that Macek's hygiene was intact, his speech was normal, his affect was appropriate, his thoughts were normal, and his abstract interpretive abilities were intact. (Tr. 588). Macek produced similar findings at the November 2014 psychotherapy evaluation. (Tr. 589).

The State agency psychological consultants concluded that Macek retained the ability to understand, remember, and carry out simple tasks. (Tr. 589). Further, they indicated that Macek could relate on a superficial and ongoing basis with coworkers and supervisors, and that he could attend to tasks for sufficient periods of time to complete them, as well as manage stresses involved with simple work. (Tr. 589). The ALJ assigned these findings partial weight. (Tr.

589).  The ALJ adopted psychological medical expert Dr. Andert's finding to further limit

Macek socially to account for his moderate limitations in social functioning.  (Tr. 589).

    The ALJ considered Macek's musculoskeletal issues, factoring in his obese body

habitus, and concluded that RFC properly reflected Macek's ability to sit, stand, walk, and lift.

(Tr. 589).  Therefore, the ALJ indicated that he was unable to conclude that Macek was limited

beyond the capacity to perform unskilled sedentary work prior to the date last insured.  (Tr. 592).

    At step four, the ALJ found that Macek was unable to perform past relevant work.  (Tr.

592).  Considering Macek's age, education, work experience, and RFC, the ALJ concluded that

there were jobs in the national economy that he could perform, including inspector (1,300 jobs

regionally and 58,000 jobs nationally), office helper (2,000 jobs regionally and 140,000 jobs

nationally), and surveillance system monitor (1,200 jobs regionally and 42,000 jobs nationally).

(Tr. 593-594).

*Discussion*

    The standard for judicial review of an ALJ's finding that a claimant is not disabled

within the meaning of the Social Security Act is limited to a determination of whether those

findings are supported by substantial evidence.  **42 U.S.C. § 405(g)** ("The findings of the

Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be

conclusive."); ***Moore v. Colvin***, 743 F.3d 1118, 1120–21 (7th Cir. 2014); ***Bates v. Colvin***, 736

F.3d 1093, 1097 (7th Cir. 2013) ("We will uphold the Commissioner's final decision if the ALJ

applied the correct legal standards and supported his decision with substantial evidence.");

***Pepper v. Colvin***, 712 F.3d 351, 361–62 (7th Cir. 2013); ***Schmidt v. Barnhart***, 395 F.3d 737,

744 (7th Cir. 2005); ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).

Substantial evidence has been defined as "such relevant evidence as a reasonable mind might

accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420,

1427, 28 L. Ed. 2d 852 (1972) (quoting ***Consol. Edison Co. v. NLRB***, 305 U.S. 197, 229, 59 S.

Ct. 206, 217, 83 L. Ed. 2d 140 (1938)); *see **Bates***, 736 F.3d at 1098; ***Pepper***, 712 F.3d at 361–62;

***Jens v. Barnhart***, 347 F.3d 209, 212 (7th Cir. 2003); ***Sims v. Barnhart***, 309 F.3d 424, 428 (7th

Cir. 2002). An ALJ's decision must be affirmed if the findings are supported by substantial

evidence and if there have been no errors of law. ***Roddy v. Astrue***, 705 F.3d 631, 636 (7th Cir.

2013); ***Rice v. Barnhart***, 384 F.3d 363, 368–69 (7th Cir. 2004); ***Scott v. Barnhart***, 297 F.3d 589,

593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an

adequate discussion of the issues." ***Lopez***, 336 F.3d at 539.

Disability insurance benefits are available only to those individuals who can establish

"disability" under the terms of the Social Security Act. The claimant must show that he is unable

"to engage in any substantial gainful activity by reason of any medically determinable physical

or mental impairment which can be expected to result in death or which has lasted or can be

expected to last for a continuous period of not less than 12 months." **42 U.S.C. § 423(d)(1)(A)**.

The Social Security regulations enumerate the five-step sequential evaluation to be followed

when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. §

404.1520**. The ALJ first considers whether the claimant is presently employed or "engaged in

substantial gainful activity." **20 C.F.R. § 404.1520(b)**. If he is, the claimant is not disabled and

the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a

severe impairment or combination of impairments that "significantly limits . . . physical or

mental ability to do basic work activities." **20 C.F.R. § 404.1520(c)**; *see **Williams v. Colvin***,

757 F.3d 610, 613 (7th Cir. 2014) (discussing that the ALJ must consider the combined effects of

the claimant's impairments). Third, the ALJ determines whether that severe impairment meets

any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. § 404.1520(e)**. However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience, and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f)**.

Macek has argued that the ALJ erred in evaluating the opinion of treating psychiatrist, Dr. Gandhi. A treating source's opinion is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record. **20 C.F.R. § 404.1527(d)(2)**; *see Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013); *Punzio v. Astrue*, 630 F.3d 704, 710 (7th Cir. 2011); *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007). The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." *Clifford v. Apfel*, 227 F.3d 863, 870 (7th Cir. 2000) (quoting *Scivally v. Sullivan*, 966 F.2d 1070, 1076 (7th Cir. 1992)); *see* **20 C.F.R. § 404.1527(d)(2)** ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

"'[O]nce well-supported contradicting evidence is introduced, the treating physician's evidence is no longer entitled to controlling weight' and becomes just one more piece of

evidence for the ALJ to consider." ***Bates***, 736 F.3d at 1100. Controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony. ***Schmidt***, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."); *see, e.g.*, ***Latkowski v. Barnhart***, 93 Fed. App'x 963, 970-71 (7th Cir. 2004); ***Jacoby v. Barnhart***, 93 Fed. App'x 939, 942 (7th Cir. 2004). If the ALJ was unable to discern the basis for the treating physician's determination, the ALJ must solicit additional information. ***Moore v. Colvin***, 743 F.3d 1118, 1127 (7th Cir. 2014) (citing ***Similia v. Astrue***, 573 F.3d 503, 514 (7th Cir. 2009)). Ultimately, the weight accorded a treating physician's opinion must balance all the circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician also may "bend over backwards to assist a patient in obtaining benefits . . . [and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are." ***Hofslien v. Barnhart***, 439 F.3d 375, 377 (7th Cir. 2006) (internal citations omitted); *see* ***Punzio***, 630 F.3d at 713.

The ALJ assigned little weight to Dr. Gandhi's opinions because he failed to supply the records that supported them. Therefore, the ALJ indicated that he was unable to determine how consistent Dr. Gandhi's opinions were with his actual clinical impressions. The ALJ, on two separate occasions, requested that Dr. Gandhi provide the agency his clinical notes. An ALJ need not give controlling weight to a treating physician's opinion if it is not supported by objective clinical findings. **20 C.F.R. § 404.1527(d).** One of the factors the ALJ must weigh in determining how much weight to give the treating physicians is the "supportability of the

medical opinion". **20 C.F.R. § 404.1527(d)(1)-(6).** However, "well supported" does not mean that the opinion has to be fully supported. **SSR 96-2p.**

The November 19, 2009 and February 23, 2010 letters submitted by Dr. Gandhi contained mental status examinations. The ALJ indicated that he used the letters to determine Macek's functionality and the appropriate weight to afford to Dr. Gandhi's assessment. Therefore, despite the Commissioner's contentions, the mental status examination notes provided enough objective medical evidence for the ALJ to discredit Dr. Gandhi's opinion.

Dr. Gandhi, who had been Macek's treating clinician since early 2002, reported that Macek had vegetative depression, fatigue, and a tendency to self-medicate with alcohol. (Tr. 361). He indicated that Macek was paralyzed emotionally and incapable of working. (Tr. 447). He assessed Macek with a GAF score of 35. Further, Dr. Gandhi's findings in the November 2009 letter indicated that Macek was pleasant and friendly in his demeanor and oriented to persons, places, and time. (Tr. 362). However, Macek's concentration was poor and his short-term memory was affected. (Tr. 362). Macek was sad and tearful at times, felt hopeless, and had frequent thoughts of suicide. (Tr. 362). Dr. Gandhi found that Macek's depressed speech was normal and his judgment and insight were intact. (Tr. 362). Also, he indicated that Macek was capable of managing his own funds. (Tr. 362).

Dr. Gandhi's findings in the February 2010 letter concluded that Macek was alert and oriented to persons, places, and time. (Tr. 446). However, Macek appeared depressed and tearful at times and had passively suicidal thoughts, but no active plans. Macek speech was within normal limits, and his insight and judgment were intact. (Tr. 446).

The ALJ's decision indicated that Dr. Gandhi's "examination impression that accompanied the records failed to support his opinion, as such little weight was afforded to it."

(Tr. 587).  The ALJ discredited Dr. Gandhi's opinion because the GAF score he assessed was not reconcilable with his assessment that Macek retained the ability to manage his own finances. (Tr. 587).  The ALJ concluded that Macek's ability to manage his own funds reflected a greater social and cognitive functionality than assessed by Dr. Gandhi.  (Tr. 587).  Further, the ALJ found that Dr. Gandhi's February 2010 findings detracted from his recommendations, and while the findings were consistent with the record, no other clinician had noted significant cognitive disabilities.  (Tr. 587).

Macek has argued that the GAF score of 35 assessed by Dr. Gandhi was wholly consistent with his finding that Macek had vegetative symptoms of depression with sad mood, crying spells, feelings of helplessness and hopelessness, frequent thoughts of suicide, low energy, and self-medication through substance abuse and excessive food intake.  Further, the ALJ failed to explain how the GAF score was inconsistent with Dr. Gandhi's finding that Macek could manage his own funds.  The Commissioner contends that the ALJ properly gave the GAF score little deference because examining physicians found Macek to have a greater functioning ability.  However, the circuit court has made clear that what matters are the reasons articulated by the ALJ.  *Spiva v. Astrue,* 628 F.3d 346, 353 (7th Cir. 2010); *Larson v. Astrue,* 615 F.3d 744, 749 (7th Cir. 2010).  Although the ALJ cited the opinions of the agency psychologists, he did not use their opinions to support his decision to give little weight to Dr. Gandhi's opinion. *See* **20 C.F.R. § 404.1527(d)(2)**; *Larson,* 615 F.3d at 751; *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009).

Further, Macek has argued that the ALJ's finding that Dr. Gandhi's findings were consistent with the record and that no other clinician noted significant cognitive deficits was improper.  Dr. Walters indicated that Macek had difficulty performing serial sevens and three

tasks, while Dr. Gopal found that Macek had poor recent memory, variable attention/concentration, slowed motor activity, preoccupied thought content, and depressed mood. (Tr. 366, 1266). Neither Dr. Walters nor Dr. Gopal offered a medical opinion on disability. The ALJ did not reference Dr. Gopal's findings in his decision. The ALJ's decision indicated that Dr. Walters determined that Macek's hygiene was intact and that he remained alert and oriented to persons, places, and time. Further, Dr. Walters found that Macek was anxious but that his affect was appropriate, his fund of information was intact, and his judgment and insight were preserved. He concluded that Macek was depressed, and assessed him with a GAF score between 60 and 65.

The Seventh Circuit has made clear that what matters are the reasons articulated by the ALJ. *Spiva v. Astrue*, 628 F.3d 346, 353 (7th Cir. 2010); *Larson v. Astrue*, 615 F.3d 744, 749 (7th Cir. 2010). The ALJ did not explain the inconsistencies found in the record or use the examining psychologists' opinions to support his decision to give little weight to Dr. Gandhi's opinion. **20 C.F.R. § 404.1527(d)(2)**; *Moss v. Astrue,* 555 F.3d 556, 561 (7th Cir. 2009). While an ALJ may decline to afford controlling weight to a treating physician's opinion if it is inconsistent with other substantial medical evidence, he must explain what evidence he found to diminish its value. *Roddy v. Astrue,* 705 F.3d 631, 636 (7th Cir. 2013). Also, internal inconsistencies may provide good cause to deny controlling weight to a treating physician's opinion, but the reasoning for the denial must be adequately articulated. *Roddy,* 705 F.3d at 636–37. An ALJ must "articulate at some minimal level his analysis of the evidence" to permit an informed review. *Zurawski v. Halter***,** 245 F.3d 881, 887 (7th Cir. 2001) (citation omitted). Therefore, the ALJ has failed to build an accurate and logical bridge from the medical evidence

to his conclusions, precluding meaningful judicial review. *See, e.g., **Dixon v. Massanari,*** 270 F.3d 1171, 1176 (7th Cir.2001); ***Groves v. Apfel,*** 148 F.3d 809, 811 (7th Cir. 1998).

The letters provided by Dr. Gandhi concluded that Macek was disabled. The ALJ did not err by discounting Dr. Gandhi's statement because that is an issue reserved for the Commissioner. **20 C.F.R. § 404.1527(d)(1).** The ability to work was not the kind of "medical opinion" that the ALJ must evaluate under **20 C.F.R. § 404.1527(b), (c).** The agency's regulations assign the decision about ability to work to the Commissioner. *See* **20 C.F.R. § 404.1527(d)(1)**; ***Johansen v. Barnhart,*** 314 F.3d 283, 288 (7th Cir. 2002); ***Clifford v. Apfel,*** 227 F.3d 863, 870 (7th Cir. 2000). Although the ALJ does "not give any special significance" to such opinions, he still must consider "opinions from medical sources" in determining the claimant's residual functional capacity. **20 C.F.R. § 404.1527(d)(2)–(3).** Therefore, even if there was sufficient evidence in the record to support the ALJ's findings, the ALJ was required to articulate the grounds for the weight given to Dr. Gandhi's opinion. *See **Steele v. Barnhart,*** 290 F.3d 936, 941 (7th Cir. 2002) ("[R]egardless whether there is enough evidence in the record to support the ALJ's decision, principles of administrative law require the ALJ to rationally articulate the grounds for his decision and confine our review to the reasons supplied by the ALJ."); *see* **20 C.F.R. § 404.1527(d)(2).** On remand, the ALJ should reevaluate the opinion of Macek's treating psychiatrist, Dr. Gandhi.

Macek has argued that the ALJ improperly evaluated his limitations in concentration, persistence, or pace. Macek contends that the ALJ improperly relied on his ability to operate a motor vehicle in making his assessment. The Commissioner has not responded to Macek's argument. The ALJ indicated that driving a vehicle is a dynamic task in a changing environment that is largely influenced by the driver. (Tr. 583). Further, the ALJ found that driving is a

complex task that requires continuous decision-making, social interaction, and the ability to multitask while dealing with external and internal stimuli. (Tr. 583). Therefore, the ALJ determined that Macek's ability to operate a vehicle required a level of functioning in excess of what he had alleged. (Tr. 583). However, the ALJ offered no explanation as to how Macek's ability to drive meant that he could sustain full time employment. *See Skubisz v. Colvin,* 2014 WL 4783851, at *9 (N.D. Ill. 2014) ("The ALJ offers no further explanation as to how Skubisz's ability to operate a motor vehicle creates a logical bridge to the conclusion that he can sustain full time employment.").

Further, Macek has argued that the ALJ failed to account for the side effects of his medications on his ability to concentrate and persist in workplace tasks. Macek has indicated that he testified that Effexor made him drowsy and that he complained to his treating providers about his difficulty sleeping at night and being tired throughout the day. The medical experts testified that his medications could cause drowsiness. (Tr. 641, 692). Specifically, Dr. Fischer stated that a person, obese and on a combination of 15 medications, like Macek could possibly require naps throughout the day and may have difficulty getting out of bed due to depression. (Tr. 695).

The ALJ was not required to make specific findings concerning the side effects of Macek's medications on his ability to work. *Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994). However, he must include sufficient information for the reviewing court to determine whether the decision was supported by substantial evidence. *Lewis v. Barnhart*, 201 F. Supp. 2d 918, 937 (N.D. Ind. 2002). The Commissioner contends that the ALJ recognized that Macek had vegetative depression and that the record as a whole did not show that the side effects of his medications would prevent him from performing unskilled sedentary work.

However, the vocational experts testified that an individual could not be off task more than 15 percent of the time and retain his job and that being off-task for greater than 10 percent of the time would preclude competitive employment. (Tr. 661, 698). The ALJ did not address the effects Macek's medication had on his ability to sustain work. The ALJ cannot ignore evidence that is adverse to his decision and must confront that evidence and explain why it was rejected. *Moore v. Colvin*, 743 F.3d 1118, 1123 (7th Cir. 2014); *Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009); *Arnett v. Astrue*, 676 F.3d 586, 592 (7th Cir. 2012). Therefore, on remand the ALJ should consider the side effects of Macek's medications on his ability to sustain work tasks.

Macek has argued that the ALJ failed to provide medical evidence that, given his limitations in concentration, persistence, or pace, he could sustain work that did not involve assembly-line production pace. The ALJ's RFC assessment and the hypothetical posed to the VE must incorporate all of the claimant's limitations supported by the medical record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014) (citing *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010)); *Indoranto v. Barnhart*, 374 F.3d 470, 473–74 (7th Cir. 2004) ("If the ALJ relies on testimony from a vocational expert, the hypothetical question he poses to the VE must incorporate all of the claimant's limitations supported by medical evidence in the record."). That includes any deficiencies the claimant has in concentration, persistence, or pace. *Yurt*, 758 F.3d at 857; *O'Connor-Spinner*, 627 F.3d at 619 ("Among the limitations the VE must consider are deficiencies of concentration, persistence and pace."); *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (indicating that the hypothetical question "must account for documented limitations of 'concentration, persistence, or pace'") (collecting cases). The most effective way to ensure that

the VE is fully apprised of the claimant's limitations is to include them directly in the hypothetical. *O'Connor-Spinner*, 627 F.3d at 619.

Courts repeatedly have held terms like "simple, repetitive tasks" alone do not exclude from the VE's consideration those positions that present significant problems with concentration, persistence, or pace. *Stewart*, 561 F.3d at 684–85 (finding hypothetical limited to simple, routine tasks did not account for limitations of concentration, persistence, or pace); *see also Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015). This is because "the ability to stick with a given task over a sustained period" is simply "not the same as the ability to learn how to do tasks of a given complexity." *O'Connor-Spinner*, 627 F.3d at 620. Therefore, "[t]he hypothetical must account for both the complexity of the tasks and the claimant's ability to stick with a task over a sustained period." *Warren v. Colvin,* 565 Fed. Appx. 540, 544 (7th Cir. 2014).

The ALJ limited Macek to simple, routine, and repetitive tasks with no fast-paced production quotas, occasional interaction with co-workers, supervisors, and the general public, and the ability to understand, remember and carry out simple instructions, make judgments on simple work related decisions, and respond to usual work situations and changes in a routine work setting. (Tr. 584). In the hypothetical presented to VE Riedl, the ALJ defined "no fast-paced work" as environments not involving an assembly line. (Tr. 658).

The Commissioner has argued that the record supported the ALJ's finding that Macek had moderate limitations in concentration, persistence, or pace. The ALJ noted Macek's GAF scores centered around 60 and that he engaged in daily activities of reading war novels, playing video games, and doing household chores. Further, that the ALJ relied on Dr. Gandhi's finding that Macek could manage his own funds. Also, the ALJ noted that Macek was found alert and oriented to persons, places, and time. The ALJ's decision afforded significant weight to the

medical expert's testimony that Macek had moderate limitations in concentration, persistence, or pace.

The ALJ limited the hypothetical to simple, routine, and repetitive tasks with no fast-paced production quotas. The ALJ defined no fast-paced production quotas as work that did not involve an assembly-line production pace. Therefore, given that the ALJ has defined no fast-paced production quotas, he has accounted for Macek's ability to sustain tasks. However, on remand the ALJ should consider the sedative side effects of Macek's medications in determining his limitations in concentration, persistence, or pace.

Macek also has argued that the ALJ erred in evaluating his limitations in social functioning. He contends that the ALJ failed to explain how his abilities to demonstrate appropriate behavior towards his treating providers and their staff, participate in a fantasy sports league, order food, and interact with his house cleaner demonstrated an ability to interact socially in excess of what he had alleged.

The Commissioner has argued that medical expert Dr. Andert, who the ALJ assigned great weight to his testimony, found that Macek had moderate limitations in social functioning. Dr. Andert accounted for Macek's reports of difficulty with social contact. The ALJ adopted the moderate limitations found by Dr. Andert. The RFC limited Macek to simple, routine, and repetitive tasks with occasional interaction with co-workers, supervisors, and the general public. Therefore, based on Macek's testimony and the medical expert's opinion, the ALJ has properly accounted for Macek's limitations in social functioning.

Based on the foregoing reasons, the decision of the Commissioner is **REMANDED** for further proceedings consistent with this order.

ENTERED this 29th day of September, 2017.

/s/ Andrew P. Rodovich
United States Magistrate Judge